IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Plaintiff, | |
| Michael Cordero Romero, pro se | CASE No. 25-CV-02857-GHW |
| v. | FIRST AMENDED COMPLAINT |
| Goldman Sachs Bank USA | Hon. Gregory H. Woods USDJ |
| d/b/a Marcus by Goldman Sachs, | Hon. Valerie Figueredo USMJ |
| Defendant. | |

**FIRST AMENDED COMPLAINT**

Plaintiff, Michael Cordero Romero, by way of this First Amended Complaint against Defendant, Goldman Sachs Bank USA ("Goldman Sachs"), states and alleges as follows:

**I. INTRODUCTION**

This case arises from Goldman Sachs' arbitrary, inconsistent, and abusive handling of Plaintiff's Marcus account, culminating in an unlawful account freeze, refusal to accept valid identity documentation, and ongoing acts of coercion and procedural manipulation. What began as a technical failure to

23 process a routine identity verification evolved into a broader
24 campaign of retaliation and abuse, carried out under the color
25 of a consumer agreement and in violation of multiple federal
26 statutes.

27 Plaintiff now seeks injunctive, declaratory, and monetary
28 relief based not only on Goldman Sachs' mishandling of his
29 account, but on violations of:

30 • **The Dodd-Frank Wall Street Reform and Consumer Protection**
31   **Act, including 12 U.S.C. §§ 5531, 78u-6**

32 • **The Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691**
33   **et seq.**

34 • **The Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693**
35   **et seq., and Regulation E**

36 • **The Expedited Funds Availability Act (EFAA), 12 C.F.R. §**
37   **229.10 et seq.**

38 • **The Bank Secrecy Act (BSA), 31 U.S.C. § 5311 et seq.**

39 • **Common law and constitutional due process principles**

40 This case is not about isolated error — it is about
41 institutional behavior.

42 This action confronts a financial institution that brazenly
43 flouts federal regulatory mandates, perpetrates deceptive and
44 abusive practices, and fabricates inconsistent justifications
45 to mask its misconduct. Far from accepting accountability or

46  correcting pervasive systemic failures, the Defendant deploys
47  formidable legal resources to obfuscate its wrongdoing,
48  resorting to evasive procedural stratagems in a calculated
49  effort to sidestep liability, thereby undermining consumer
50  protections and defying the rule of law.

51  ---

52  **II. JURISDICTION AND VENUE**

53  This Court has jurisdiction under 28 U.S.C. § 1331 because the
54  claims arise under federal law, including Dodd-Frank, ECOA,
55  EFTA, EFAA, and BSA. Declaratory relief is authorized under 28
56  U.S.C. § 2201. Venue is proper under 28 U.S.C. § 1391(b)(1)
57  because Defendant is headquartered in this District, conducts
58  business here, and executed freeze and verification decisions
59  from New York, affecting Plaintiff's account via interstate
60  electronic systems, causing harm in Oklahoma and elsewhere.

61  ---

62  **III. PARTIES**

63  Plaintiff, Michael Thomas Erwin Cordero Romero, is a natural
64  person and consumer within the meaning of the relevant federal
65  statutes, residing in Lawton, Oklahoma.

66  Defendant Goldman Sachs Bank USA is a national banking
67  institution, regulated by federal authorities, licensed in New
68  York, with its principal place of business at 200 West Street,
69  New York, NY 10282, operating as "Marcus by Goldman Sachs."

## IV. FACTUAL BACKGROUND

1. Plaintiff opened a Marcus personal savings account with Defendant on January 7, 2025.

2. On January 8, 2025, Plaintiff received two deposits from MCordero LLC into the Marcus account: $100 and $8,000, respectively. A third deposit of $7,500 was posted on January 10, 2025, bringing the total account balance to $15,600. On January 31, 2025, Defendant credited the account with $37.71 in interest, for an ending balance of $15,637.71.

3. On or about February 19, 2025, Plaintiff's access to the account was restricted without prior notice.

4. From February through April 2025, Plaintiff made at least twenty-one calls to Marcus representatives, including specific interactions on March 27 (Deborah), April 9 (Malcolm), April 10 (Grant), and April 15 (Dimitrius and Raven). These calls, recorded with consent, reflect an evolving and contradictory internal stance by Marcus regarding Plaintiff's account status, verification efforts, and legal entitlements. Despite Plaintiff's continued cooperation, these communications yielded no consistent resolution or policy rationale.

5. The only information Plaintiff was able to ascertain during these calls was that he would be receiving mail from the bank. He eventually received a document, but it contained no explanation or instructions. Upon review, it appeared the document was meant to be completed and notarized, which Plaintiff did on March 7, 2025.

6. Plaintiff submitted the notarized Affidavit of Identity via FedEx, which was signed for on March 11, 2025, at 13:41, along with an ITIN Assignment Notice (IRS CP565), EIN Confirmation Letter for MCordero LLC, Beneficial Ownership Information Report (BOIR), Articles of Organization for MCordero LLC, and Marcus/Relay Financial bank statements. Despite receiving this documentation, Defendant refused to reinstate access, citing vague authentication concerns. No specific written reason was provided.

7. On March 27, 2025, Plaintiff spoke with Marcus supervisor Deborah on a recorded line, who confirmed Defendant "located" the Affidavit of Identity but rejected it, claiming the notary's "wet ink" signature (via remote Zoom notarization) was invalid.

8. This rejection is baseless under Wyoming law (W.S. § 32-3-102(a), § 32-3-105) and New York law (N.Y. Exec. Law § 137(1); N.Y. Real Prop. Law § 309-b(1)), both of which validate out-of-state remote notarizations.

9. By rejecting Plaintiff's legally notarized Affidavit of Identity, Defendant violated applicable state law, and engaged in discriminatory and abusive conduct in violation of the ECOA, CFPA, and federal obligations by continuing to prohibit access to Plaintiff's lawfully deposited funds.

10. On April 10, 2025, Marcus supervisor Grant admitted on a recorded call that "blatant errors" had been made, including improper rejection of the Affidavit, OTP (One-Time Password) failures, and flawed identity protocols. Grant offered to transfer funds to Plaintiff's linked Capital One account and proposed a $50 goodwill gesture, which Plaintiff declined — believing at the time that the issue had been resolved and that normal account access would continue without further restriction. Unbeknownst to Plaintiff, additional restrictions would be imposed just days later..

11. Plaintiff initiated three withdrawals totaling $5,095 to his linked Capital One account. The final transfer of $2,000 on April 15, 2025, prompted a voicemail from Marcus supervisor Grant requesting a callback.

12. Plaintiff returned the call and spoke with Dimitrius, who incorrectly claimed Plaintiff could no longer transfer funds due to prior deposits from a

business account. He cited the DAA, but could not identify any relevant clause.

13. Plaintiff called again later that day and was connected with another supervisor, Raven, who repeated the same unsupported claim, quoting internal notes allegedly from Grant, and warned that further transfers could lead to additional restrictions.

14. At no time during either call did any supervisor cite any specific provision in the DAA or applicable law that justified these restrictions.

15. Defendants now retroactively claim that the reason for the Affidavit of Identity issue was failed verifications. Plaintiff did not "fail" identity verification; rather, Defendant's third-party verification system failed to accommodate identity profiles associated with ITINs, rather than SSNs — a distinction with major procedural consequences.

16. Unlike SSN holders, ITIN-based consumers are often rejected by systems designed only for SSN pools. Marcus' system often did not recognize Plaintiff's legitimate responses, and Marcus agents expressed frustration over these failures during multiple calls.

17. Plaintiff provided accurate answers such as "Cordero", "Michael", "Summit Avenue", and "Comanche

County", but was still rejected — including in one case where all available options were incorrect.

18. These failures were systemic, not user error, and constitute discriminatory treatment under ECOA and abusive conduct under CFPA.

19. Defendant has never provided a specific, written explanation for the freeze — not before, during, or after litigation.

20. Under EFAA and the BSA's CIP rules, a bank must verify identity in a reasonable period or return funds. Goldman Sachs did neither.

21. This action began not as a private lawsuit, but as regulatory complaints to the CFPB (filed March 28), OCC (filed March 27), and NYDFS (filed March 27). Plaintiff filed those complaints before taking legal action. Over nearly 7 hours of phone calls spanning 21 interactions over 2.5 months, Plaintiff explained the problem and sought internal resolution.

22. Rather than address the clear procedural defects and regulatory violations, Defendant responded by suggesting that Plaintiff simply "close the account" and "move on" — a position conveyed by defense counsel even after litigation had commenced. In essence, Defendant implied that the only way for Plaintiff to avoid future harm was

to leave the bank entirely. This posture is not a settlement offer — it is coercion: a demand that Plaintiff abandon his legal rights and forego statutory protection in exchange for relief from further abuse.

23. Defendant now vaguely suggests, without documentation or prior communication, that "certain transfers" justified the freeze — a claim not raised during any of the 21 recorded calls, nor cited in written correspondence, and unsupported by any provision of the DAA. These after-the-fact allegations appear tailored to justify a freeze whose true basis, if any, remains undocumented.

24. The conduct at issue is not an isolated contractual dispute or customer service error. It reflects a broader pattern of institutional misconduct — a willful and sustained breach of federal obligations under a cascade of consumer protection laws, banking regulations, and anti-retaliation statutes, including but not limited to the Dodd-Frank Act (12 U.S.C. §§ 5531, 78u-6), the Equal Credit Opportunity Act (15 U.S.C. § 1691), the Electronic Fund Transfer Act (15 U.S.C. § 1693), and the Expedited Funds Availability Act (12 C.F.R. § 229.10).

25. By virtue of having filed formal regulatory complaints with the CFPB, OCC, NYDFS, and invoking the jurisdiction of this Court, Plaintiff qualifies for

whistleblower protections under the Dodd-Frank Act, 12 U.S.C. § 78u-6(h).

---

## V. CLAIMS FOR RELIEF

**Count I – Violation of Dodd-Frank Act, 12 U.S.C. § 5531 (Abusive Acts and Practices)**

Defendant engaged in abusive conduct by imposing arbitrary account freezes without meaningful notice, just cause, or consistent standards, interfering with Plaintiff's fund access, causing emotional and financial harm, and violating Dodd-Frank's consumer protection provisions.

**Count II – Violation of Dodd-Frank Act, 12 U.S.C. § 78u-6 (Whistleblower Retaliation)**

Plaintiff filed formal complaints with CFPB, NYDFS, and OCC on March 27 and 28, 2025, alleging regulatory misconduct. Defendant escalated its refusal to reinstate access and rejected Plaintiff's proposed stipulation for resolution, constituting retaliation against protected whistleblower activity under Dodd-Frank.

**Count III – Violation of Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691**

Defendant discriminated against Plaintiff by applying inconsistent and exclusionary identity verification procedures that disproportionately impacted individuals with ITINs.

Defendant's rejection of a legally notarized affidavit and failure to accommodate alternative authentication processes reflects disparate treatment based on national origin and identification method.

**Count IV – Violation of Electronic Fund Transfer Act and Regulation E, 15 U.S.C. § 1693**

Defendant violated EFTA and its implementing regulations by failing to provide written notice of account restrictions, blocking authorized outbound transfers without cause, and refusing to explain or document its actions, in breach of Plaintiff's rights under Regulation E (12 C.F.R. § 1005.10).

**Count V – Violation of Expedited Funds Availability Act (EFAA), 12 C.F.R. § 229.10**

Defendant failed to make Plaintiff's $15,600 deposit available within the timeframes required by EFAA. Defendant held the funds for over 60 days without notifying Plaintiff of any basis for delay, despite acknowledging there was no fraud or criminal activity.

**Count VI – Violation of Bank Secrecy Act (BSA), 31 U.S.C. § 5311**

Defendant failed to comply with the Customer Identification Program (CIP) obligations under the BSA (31 C.F.R. § 1020.220) by failing to verify Plaintiff's identity in a reasonable timeframe, rejecting valid documentation, and refusing to explain the basis for account restrictions.

265   **Count VII – Breach of Duty of Good Faith and Fair Dealing**

266   Defendant, even if within its contractual authority, failed to

267   exercise that authority in good faith. Defendant's conduct —

268   including contradictory internal instructions, rejection of

269   notarized documents, refusal to provide a written explanation,

270   and unsupported transaction blocks — violated the implied

271   covenant of good faith and fair dealing inherent in its

272   agreement with Plaintiff.

273   **Count VIII – Declaratory Relief (28 U.S.C. § 2201)**

274   Plaintiff seeks a declaration that Defendant's conduct as

275   alleged above violated federal law and that any future

276   imposition of account freezes or transaction restrictions must

277   be supported by documented regulatory or contractual cause,

278   consistent with statutory due process and consumer protection

279   rights.

280   **Count IX – Breach of Contract (Deposit Account Agreement)**

281   Plaintiff re-alleges and incorporates by reference all

282   preceding paragraphs as if fully set forth herein.

283   Plaintiff and Defendant entered into a binding Deposit Account

284   Agreement ("DAA") governing the operation of Plaintiff's

285   Marcus savings account. The DAA permitted Defendant to impose

286   transaction limits or restrictions only under specific,

287   narrowly defined circumstances — such as when Defendant has a

288   reasonable belief that unauthorized activity has occurred,

when identification requirements are not met, or when required by law.

Defendant breached the DAA by:

- Failing to provide Plaintiff with any contemporaneous written notice or explanation of the account freeze;

- Refusing to accept valid identity documentation, including a notarized Affidavit of Identity submitted on March 11, 2025, despite having no stated objection to its format under the governing agreement;

- Imposing inconsistent restrictions without citation to any specific DAA provision;

- Reversing internal decisions, such as the offer by agent Grant on April 10, 2025, to restore account access and initiate a transfer, without explanation or documentation;

- Claiming — without prior disclosure or policy basis — that certain incoming business-related transfers violated the DAA, despite no provision in the agreement prohibiting receipt of such deposits into a personal savings account.

Defendant's actions constitute a material breach of its contractual obligations under the DAA, both express and implied. The DAA does not authorize arbitrary restrictions,

contradictory internal guidance, or indefinite withholding of funds without documentation or recourse.

As a result of this breach, Plaintiff has suffered damages including, but not limited to, financial hardship, emotional distress, loss of access to personal savings, reputational harm in dealing with other institutions, and costs incurred in seeking verification and legal redress.

These breaches of contract are not isolated; they are the factual foundation for the statutory harms described in Counts I–VIII.

---

VI. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

1. Issue a declaratory judgment that Defendant violated Plaintiff's rights under federal law;

2. Enter temporary and permanent injunctive relief barring Defendant from re-freezing or obstructing account access without a written, substantiated regulatory basis;

3. Award statutory and compensatory damages to be determined at trial, but not less than $75,000, including financial losses, non-economic damages (emotional distress), and verification costs;

4. Award punitive damages to be determined at trial, but not less than $200,000, to deter Defendant's systemic misconduct;

5. Grant reasonable attorney's fees and costs;

6. Grant such further relief as the Court deems just and proper.

Dated: April 23, 2025

Respectfully submitted,

/s/ Michael Cordero Romero

Pro Se Plaintiff